ARMS & AMMUNITION of The AMELIA v. UNITED STATES. See Case No. 14,466a.

---

## Case No. 539.

### In re ARMSTRONG.

### ROOT v. HILLIARD.

[9 Ben. 212;[1] 16 N. B. R. 275.]

District Court, D. Vermont. Aug., 1877.

BANKRUPTCY — MORTGAGE IN FRAUD — BELIEF OF INSOLVENCY—PREFERENCE.

1. A., who was a farmer, owed H. a large sum of money for a considerable time and, after repeated failures to pay, gave H. a mortgage to secure the debt. H. [A.] subsequently went into bankruptcy, and his assignee having brought suit to set aside the mortgage: *Held*, That the repeated failures to fulfil his promises to pay, by the bankrupt, with the knowledge of his other debts that the defendant had, were reasonable cause for the defendant to believe that insolvency existed;

[Cited in Metcalf v. Officer, 2 Fed. 643.]

2. That defendant, knowing there were other large debts unsecured, knew that, if the mortgage was valid, he was obtaining a preference fraudulent under the statute.

[Cited in Metcalf v. Officer, 2 Fed. 643.]

In bankruptcy.

WHEELER, District Judge. Upon hearing in this cause upon bill, answer, oral testimony taken pursuant to written stipulations filed, and argument of counsel, there is no question made but that the mortgage sought to be set aside was made within the time prescribed to be subject to the proceeding; nor but that the bankrupt was insolvent

[1][Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

and made it with a view to give preference to the defendant; but question is made as to whether the defendant received it having reasonable cause to believe the defendant was insolvent and knowing it was made in fraud of the provisions of the statute relating to bankruptcy.

The debt due the defendant was quite large and had stood during a considerable time. He had been urging payment more than two years and received several promises that it should be paid at specified times, which had not been kept. It clearly appears that he had known for considerable time that there were other debts, to an amount greater than his; for he has testified that on enquiry he was informed by the bankrupt about six months before, that it would take a sum greater than twice his debt to pay all the debts. It is true, as has been urged, that the defendant was not in mercantile life, but was a farmer, and prompt payment was less to be expected, and failure to pay would excite less suspicion than if he had been a trader or a banker; but still repeated failure to pay when promised is not usual among men of his class and, when repeated times enough, would come to be quite out of the usual course of business and indicate inability.

The question as to cause for belief is, whether in this case it had, at the time of the mortgage, got to that, that the defendant either knew, or ought to have known, that the bankrupt, because he could not, did not pay, according to the usual course. There was a promise to pay when a child, that the defendant wanted the money for, became of age in 1874, and another to pay when another child came of age soon after, and another to pay at the expiration of thirty days, that expired just before the mortgage was given, none of which were kept. So many successive failures to meet engagements were not to be expected of a man in the otherwise apparent circumstances of the bankrupt without some unusual cause, and, in connection with the knowledge of other debts that the defendant had, would naturally indicate to him that want of ability to pay was the cause. These indications, as now viewed, constituted within the meaning of the law according to the settled interpretations, reasonable cause for him to believe that the insolvency, which in fact existed, did exist.

As to whether the defendant knew the mortgage was made in fraud of the provisions of the statutes relating to bankruptcy, it is necessary, in order to avoid it, that he should have known it would operate to the contrary of what the effect of those provisions would be. The effect of those provisions would be to divide the property of the bankrupt, liable for debts, rateably among his creditors without preference of any of those then unsecured over the rest. He knew there were other unsecured creditors to a large amount whom the bankrupt could not pay more than he could him; that a large part of the property was common to all from which to get their pay; and he must have known when he took the mortgage that if it was valid to secure his debt, he was lessening their chances to get their pay as much as he was improving his own to get his, and that he was thereby obtaining a preference over the rest. So he knew what the effect would be, and the effect he knew of would be fraudulent in the eye of the provisions of those statutes.

It is urged that there was such an agreement to mortgage, made before, that taking this one was not fraudulent. But the evidence, although it shows security was talked about, fails to show any definite agreement to make this or a similar, or in fact any mortgage, earlier than this one was made, and therefore it cannot be found that this mortgage was made in pursuance of a previous agreement to make it earlier. This makes it unnecessary to consider what sort of an agreement in that direction would be sufficient for the purpose. For these reasons, let a decree be entered setting aside the mortgage, with costs.